## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J.N. and J.N., in their Own Right and** | : | **CIVIL NO. 1:14-CV-0974** |
| **as Parents and Natural Guardians of** | : | |
| **J.N., a Minor,** | : | **(Chief Judge Conner)** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SOUTH WESTERN SCHOOL** | : | |
| **DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiffs J.N. and J.N. ("the parents"), on their own behalf and as parents
and natural guardians of J.N. ("J.N."), filed the above-captioned action, alleging
violations of the Individuals with Disabilities Education Act ("IDEA"), as amended,
20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, as
amended, 29 U.S.C. § 794.  Plaintiffs seek reimbursement for tuition and related
expenses, reimbursement for expert testimony, compensatory education, and costs
and fees.  Presently before the court is a motion (Doc. 10) to supplement the
administrative record.  For the reasons that follow, the court will deny the motion.

## I.    Factual Background and Procedural History

J.N. is a fourteen-year-old special needs student who resides in the South
Western School District ("the District").  (Doc. 1 ¶¶ 1, 5).  J.N. attended homeschool
from kindergarten through fifth grade.  (Id. ¶¶ 6, 24).  In February 2011, the Penn
State Hershey Psychiatric Institute evaluated J.N. and diagnosed him with

attention deficit hyperactivity disorder, dysgraphia, and specific learning

disabilities in reading, mathematics, and written expression.  (Id. ¶ 7).  In an

Independent Educational Evaluation ("IEE") of J.N. in July 2012, Dr. Margaret Kay

("Dr. Kay") confirmed these learning disabilities and recommended, *inter alia*, that

J.N. receive instruction using "Wilson" reading programs to improve his reading

skills.  (Id. ¶¶ 15-16).  With respect to placement, Dr. Kay stated that J.N. requires a

"small, structured school setting" designed to assist students with nonverbal or

right-hemispheric learning disorders, such as The Janus School ("Janus").  (Id.

¶ 17).

        J.N. attended sixth grade at an intermediate school in the District during the

2012–2013 academic year.[1]  In August 2012, J.N.'s parents and the District attended

an Individualized Education Program ("IEP")[2] meeting at which the District offered

J.N. reading instruction using the "System 44" program rather than the Wilson

program.  (Id. ¶ 25).  At that time, J.N.'s reading skills were between the third- and

fourth-grade level.  (Id. ¶ 26).  The parties strenuously dispute the extent to which

---

        [1] After J.N.'s parents filed a due process complaint before the beginning of
the 2012–2013 academic year, the parties entered into a settlement whereby they
agreed to release the District from liability for the 2012–2013 school year in return
for certain compensatory education and fees.  (Doc. 18 at 3).  Plaintiffs therefore do
not bring claims with respect to the 2012–2013 school year.

        [2] An IEP is a "detailed instruction plan" for each student protected under the
IDEA and consists of "a specific statement of a student's present abilities, goals for
improvement, services designed to meet those goals, and a timetable for reaching
the goals via the services."  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir.
1995).

J.N. made meaningful progress in reading and other subjects during the 2012–2013 academic year.  In May 2013, Dr. Kay conducted another IEE of J.N. and noted that J.N.'s standard scores and growth scale values ("GSVs") decreased in reading comprehension and related areas over the course of the prior school year.  (Id. ¶¶ 40-41).  Dr. Kay reiterated her recommendation that J.N. receive instruction using the Wilson reading program, (id. ¶ 43), and concluded that the District had not provided J.N. an appropriate education with respect to literacy skills, (Doc. 9-13, Ex. P-27 at 15).

The parties reconvened for an IEP meeting on July 8, 2013.  The District offered J.N. reading instruction using the "Read 180" program for the 2013–2014 academic year.  (Doc. 13 ¶ 63).  J.N.'s parents objected to this program and requested that the District place J.N. at Janus at its expense.  (Doc. 1 ¶ 55).  They subsequently filed a due process complaint with the Pennsylvania Office for Dispute Resolution ("ODR"), which they amended on July 15, 2013.  (Id. ¶ 57).  The District drafted a revised IEP on July 18, 2013 in which it proposed sixty minutes of Wilson instruction per day in connection with Read 180.  (See Doc. 13 ¶ 67).  J.N.'s parents again requested that the District place J.N. at Janus, but the District denied this request.  (Doc. 1 ¶ 69).  The parents enrolled J.N. at Janus for 2013–2014 school year.  (Id. ¶¶ 72, 75).

The due process hearing consisted of five hearing sessions between September 2013 and January 2014.  After receiving testimony from J.N.'s parents, Dr. Kay, District administrators, and a representative from Janus, among others,

3

the Hearing Officer concluded that the Read 180 program met J.N.'s needs and that

the District's July 8, 2013 IEP offered J.N. a free and appropriate public education

("FAPE") for the 2013–2014 academic year.  (Doc. 1-3 at 17-18).  Hence, the Hearing

Officer did not consider whether Janus was an appropriate private placement for

J.N.  (Id. at 17).  Over the course of the hearing, the Hearing Officer excluded

certain proposed exhibits, several of which are at issue in the instant motion.

Plaintiffs filed their complaint (Doc. 1) in this court on May 21, 2014.  On July

14, 2014, plaintiffs moved to supplement the administrative record.  The motion has

been fully briefed and is ripe for disposition.

## II.   Legal Standard

The IDEA seeks "to ensure that all children with disabilities have available to

them a free appropriate public education that emphasizes special education and

related services designed to meet their unique needs and prepare them for further

education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  In

furtherance of this goal, the IDEA requires that state and local agencies establish

certain procedural safeguards in connection with the provision of FAPE.  Id.

§ 1415(a).  These procedures must allow parents to examine their child's records,

participate in IEP meetings, and obtain IEEs.  Id. § 1415(b)(1).  Parents also have a

right to an impartial due process hearing conducted by a state or local agency.  Id.

§ 1415(f)(1)(A).  After exhausting state remedies, a party who is aggrieved by the

result of the state due process hearing may bring suit in federal district court for

4

violation of the IDEA.  Id. § 1415(i)(2)(A).  A district court possesses jurisdiction to hear such actions regardless of the amount in controversy.  Id.

The IDEA provides that a district court "shall hear additional evidence at the request of a party."  Id. § 1415(i)(2)(C)(ii); accord 34 C.F.R. § 300.516(c)(2). "Additional evidence" does not refer to all evidence, but rather to evidence that properly supplements the administrative record.  See Susan N., 70 F.3d at 759 (citing Town of Burlington v. Dep't of Educ., 736 F.2d 773, 790 (1st Cir. 1984), aff'd sub nom. Sch. Comm. of Town of Burlington. v. Dep't of Educ., 471 U.S. 359 (1985)). A district court must evaluate a party's proposed evidence and determine whether it is relevant, noncumulative, and useful with respect to "whether Congress's goal has been reached for the child involved."  Id. at 759-60.  Evidence may be excluded when it would merely "embellish" testimony provided at the administrative hearing.  Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994).

Whether additional evidence should be admitted is left to the discretion of the district court.  Susan N., 70 F.3d at 760.  When exercising this discretion, the court should be mindful of the IDEA's "general framework of deference to state decision-makers."  Antoine M. v. Chester Upland Sch. Dist., 420 F. Supp. 2d 396, 402 (E.D. Pa. 2006) (quoting Susan N., 70 F.3d at 758).  Indeed, automatic admission of new evidence "would vitiate congressional intent that courts defer to the educational expertise of the agency."  Lebron v. N. Penn Sch. Dist., 769 F. Supp. 2d 788, 795 n.7 (E.D. Pa. 2011).

Before admitting additional evidence, "a court must determine whether the party introducing the additional evidence has presented a sufficient justification for not proffering the evidence at the administrative hearing." Antoine M., 420 F. Supp. 2d at 403 (citing Susan N., 70 F.3d at 760).  Factors that a court may consider in deciding whether to admit additional evidence include (1) whether a procedural bar prevented the introduction of the evidence at the administrative hearing; (2) whether the party seeking admission of the evidence deliberately withheld it at the hearing; (3) whether the introduction of the additional evidence would be prejudicial to the opposing party; and (4) the potential impact of the admission of the evidence on the administration of justice.  Id.

III.   **Discussion**

Plaintiffs move to supplement the administrative record with five exhibits. First, plaintiffs request admission of a July 7, 2014 supplemental report by Dr. Kay that clarifies and expounds on her testimony at the September 23, 2013 due process hearing.  Second, plaintiffs move to admit the *curriculum vitae* of a Janus administrator who testified at the December 3, 2013 hearing.  Next, plaintiffs seek admission of a series of August 2012 emails among the District's counsel, a District employee, the parents, plaintiffs' counsel, and Dr. Kay regarding appropriate educational programs for J.N.  Fourth, plaintiffs request admission of J.N.'s work samples and progress reports from Janus, which date from August 2013 to November 2013.  Finally, plaintiffs move to admit court documents that allegedly

demonstrate a conflict of interest between the Hearing Officer and counsel for the

District.  The court addresses each of these proposed exhibits *seriatim*.

### A.    July 7, 2014 Supplemental Report of Dr. Kay (Proposed Exhibit A)

Plaintiffs assert that the Hearing Officer violated their due process rights by

precluding Dr. Kay from testifying about the content of her expert reports on

direction examination during the September 23, 2013 hearing.  (Doc. 12 at 3).[3]  To

rectify this purported error, plaintiffs request admission of a two-page

"supplemental report" by Dr. Kay, dated July 7, 2014.  (Id. at 4).  In the report, Dr.

Kay avers that she was not permitted to finish her testimony regarding J.N.'s

progress in reading, the use of GSVs and other evaluative metrics, and whether the

District offered FAPE to J.N.  (Doc. 10-2).  Proposed Exhibit A clarifies and

expounds on Dr. Kay's September 23, 2013 testimony in these areas.  The District

argues that the supplemental report is cumulative and that the Hearing Officer

complied with applicable due process hearing procedures.  (Doc. 18 at 10-19).  The

court agrees that proposed Exhibit A is cumulative.

The supplemental report first states that the Hearing Officer instructed Dr.

Kay to refer to her expert reports rather than provide additional testimony after

plaintiffs' counsel asked her whether J.N. made meaningful progress in reading

---

[3] The "Generally Applicable Prehearing Directions" within the Pennsylvania Special Education Dispute Resolution Manual instruct hearing officers that "[a]ny evaluation report, re-evaluation report, independent report, or other report that is offered as an exhibit shall speak for itself, and shall serve as direct testimony of its author as to the substantive contents of the report."  (Doc. 18-2, Ex. G ¶ 10) (emphasis omitted).

during the 2012–2103 school year.  The supplemental report observes that J.N. was evaluated using the Wechsler Individual Achievement Test-III ("WIAT-III") in 2012 and again in 2013.  (Doc. 10-2 at 1).  That evaluation revealed that J.N.'s standard scores in reading comprehension and word reading declined and that his grade equivalency scores in those same areas declined and trivially improved, respectively.  (Id.)  Dr. Kay further explains that J.N.'s oral reading fluency standard score decreased and that while his standard score in pseudoword decoding improved somewhat, J.N. made less than a year of progress in phonetic decoding between the two evaluations.  (Id.)  In light of these results, Dr. Kay recommended that J.N. receive ninety minutes of Wilson reading instruction per day.  (Id.)

Dr. Kay's first proffered clarification is wholly subsumed by her analysis in J.N.'s May 14, 2013 IEE, which is part of the administrative record.  The IEE provides a detailed comparison of J.N.'s 2012 and 2013 WIAT-III results, including J.N.'s standard scores and grade equivalency levels, and explains the significance of the various reading subtests.  (Doc. 9-13, Ex. P-27 at 8, 14).  The IEE concludes, using language nearly identical to the supplemental report, that "[g]iven [J.N.'s] limited progress in basic reading skills, reading fluency and reading comprehension, it is recommended that he receive 60 to 90 minutes of one-to-one intensive Wilson Reading instruction on a daily basis to replace System 44 instruction." (Id. at 15) (emphases omitted).

Second, the supplemental report explicates the differences between standard scores and GSVs.  According to the supplemental report, an increase in a student's standard score in a given subject indicates that the student made more than a year of progress in that subject, while a decrease in the student's standard score indicates that the student made less than a year of progress.  (Doc. 10-2 at 1-2).  Dr. Kay further explains that GSVs may be used to monitor progress using "psychometrically sound values . . . based on an equal interval scale" and that this metric reflects changes more accurately than standard scores.  (Id. at 2).  Because J.N.'s GSVs evidence little or no progress in certain key areas, Dr. Kay concludes that J.N. cannot achieve meaningful progress unless the District modifies his educational program.  (Id.)

This proffered evidence is also largely duplicative of information within the May 14, 2013 IEE.  The IEE explains what changes in standard scores represent,[4] that GSVs better reflect changes in a student's progress, and that J.N. made insufficient progress in basic reading skills, reading fluency, and reading comprehension.  (Doc. 9-13, Ex. P-27 at 13-14).  An addendum to the IEE contains the relevant GSVs in numerical and graphical form.  (Doc. 9-22, Ex. S-8 at 74-93).  Consistent with the supplemental report, the IEE concludes that the District must "re-vamp" J.N.'s literacy skill instruction and "substantially revise his IEP and

---

[4] Dr. Kay also testified about how to interpret standard scores.  (Tr. at 198:10-199:6).  Citations to "Tr. at __" are to the official transcript of proceedings of the September 23, 2013 to January 17, 2014 due process hearing, docketed at Docket Nos. 9-5 to 9-9.

provide specially-designed instruction for basic reading skills, reading fluency,

reading comprehension and written expression" in order for J.N. to achieve

meaningful educational progress.  (See Doc. 9-13, Ex. P-27 at 13-14, 16).

Finally, the supplemental report seeks to elaborate on Dr. Kay's testimony

regarding whether the July 8, 2013 IEP offered FAPE to J.N.  Specifically, Dr. Kay

avers that J.N. "required an intensively remedial synthetic, phonetic literacy

program to make reasonable educational progress in deficit literacy skill areas" and

that the District did not provide FAPE in basic reading skills, reading fluency,

reading comprehension, or written expression.  (Doc. 10-2 at 2).

There is no evidence on the record to suggest that Dr. Kay was barred from

providing her full views on whether the District offered J.N. FAPE, and plaintiffs

have not presented a sufficient justification for failing to elicit this additional

testimony at the hearing.  See Antoine M., 420 F. Supp. 2d at 403.  In any event, Dr.

Kay's positions on FAPE are well-documented on the existing record.  In the May

14, 2013 IEE, Dr. Kay determined that J.N. had not received FAPE in the same areas

that she identified in the supplemental report and similarly opined that J.N. requires

an "intensively remedial synthetic, phonetic literacy skill program."  (Doc. 9-13,

Ex. P-27 at 15).  At the hearing, Dr. Kay clearly testified that "[J.N.] needs a

combination of intensive tutorial intervention, especially with respect to literacy skill

instruction."  (Tr. at 253:18-20).

After evaluating Dr. Kay's supplemental report, the court concludes that

proposed Exhibit A is cumulative of the administrative record and merely

embellishes Dr. Kay's prior expert reports and testimony.  See D.K. v. Abington Sch.
Dist., 696 F.3d 233, 253 (3d Cir. 2012) (excluding an export report that "offers only a
commentary, prepared with the benefit of hindsight, regarding the evidence and
testimony already presented").  Accordingly, the court will deny plaintiffs' request to
admit proposed Exhibit A.[5]

### B. *Curriculum Vitae* of Stacy Jasin (**Proposed Exhibit B**)

Plaintiffs also move to admit the *curriculum vitae* of Stacy Jasin ("Jasin"),
Director of Academics at Janus.  According to plaintiffs, the Hearing Officer
improperly excluded her *curriculum vitae* on the grounds that it was not provided to
the District sufficiently in advance of the December 3, 2013 hearing.  (Doc. 12 at 4-5).
The District responds that the *curriculum vitae* was not timely disclosed, that it is
cumulative, and that it is irrelevant.  (Doc. 18 at 20-24).   The court agrees that
proposed Exhibit B was properly excluded as untimely and that it is cumulative.

---

[5] The court has no difficulty finding Dr. Kay's supplemental report
cumulative of the record and hence does not address the propriety of the
procedures that ODR implements with respect to special education due process
hearings, including the procedures that govern expert testimony.  To the extent
that plaintiffs seek to admit an excerpt from the 2009 edition of the Pennsylvania
Special Education Dispute Resolution Manual concerning the right to present
expert medical evidence and testimony at due process hearings (proposed Exhibit
F), the court will decline to admit that exhibit on the grounds that the 2009 edition
of the Manual is no longer operative.  The relevant excerpt is present in the state
regulations, however, and the court takes notice of that provision.  See 22 PA. CODE
§ 14.162(m).  The court agrees with the District that special education hearing
officers are not strictly bound by the Federal Rules of Evidence.  Council Rock Sch.
Dist. v. M.W. ex rel. Marc W., No. 11-4824, 2012 WL 3055686, at *6 (E.D. Pa. July 26,
2012); see also 22 PA. CODE § 14.162(f) ("Although technical rules of evidence will not
be followed, the decision shall be based solely upon the substantial evidence
presented at the hearing.").

The IDEA's implementing regulations provide that a party to a due process hearing may "[p]rohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing." 34 C.F.R. § 300.512(a)(3). Pennsylvania's administrative code mirrors this provision. See 22 PA. CODE § 14.162(k). The IDEA generally excludes federal holidays from the definition of a "business day." See 34 C.F.R. § 300.11(b).

Plaintiffs called Jasin to testify on December 3, 2013 regarding Janus's educational programs and J.N.'s progress at Janus during his time there.[6] At the hearing, the District objected to the introduction of Jasin's *curriculum vitae* on the grounds that plaintiffs had not disclosed it until November 26, 2013, four business days before the hearing. (Tr. at 284:24-285:5). The Hearing Officer sustained the objection and excluded the proposed exhibit. (Tr. at 285:16-286:13 ("I don't know that [counsel for the District] has had the opportunity to digest what's in the CV.")). The court finds no procedural infirmities with this ruling. See Monticello Sch. Dist. No. 25 v. George L., 102 F.3d 895, 901-02 (7th Cir. 1996). As the court explained in L.J. v. Audubon Board of Education, the "five-day rule" furthers the IDEA's goal of prompt resolution of disputes by reducing the potential for protracted hearings due to untimely disclosures. No. 06-5350 (JBS), 2008 WL 4276908, at *5 (D.N.J. Sept. 10, 2008) (citing Dell v. Bd. of Educ., Twp. High Sch. Dist. 113, 32 F.3d 1053, 1061 (7th

---

[6] On their August 2013 and September 2013 exhibit lists, plaintiffs indicated that they would provide a *curriculum vitae* for a "Janus School Representative" and that a representative from Janus would testify during the proceedings. (See Doc. 18-1, Ex. E).

Cir. 1994)); see also M.M. v. Lafayette Sch. Dist., No. 10-04223 SI, 2011 WL 5190033, at *7 (N.D. Cal. Oct. 31, 2011) (observing that the IDEA's requirement that parties disclose all evaluations at least five business days before the due process hearing ensures procedural fairness).  This rule may constitute a procedural bar that prevented plaintiffs from introducing the exhibit at the administrative level, but if relaxed on appeal would result in prejudice to the District.

The court also finds that the proposed exhibit is cumulative of the administrative record.  Contrary to plaintiffs' assertion (Doc. 12 at 4), the Hearing Officer did not prohibit Jasin from testifying about her background.  Rather, the Hearing Officer expressly informed Jasin that "we're not limiting your testimony to your background.  It's just the actual pages of your CV that are in front of us, but we won't be reviewing."  (Tr. at 288:7-10).  Consistent with this instruction, plaintiffs' counsel proceeded to question Jasin about, *inter alia*, her positions at Janus, her academic background, and her continuing education experiences with students with learning disorders.  (Tr. at 288:13-291:3; 307:7-25).  The information contained in proposed Exhibit B is largely summarized by this testimony.  (See Doc. 10-3).  The Hearing Officer therefore had every ability to evaluate Jasin's background alongside her testimony.[7]

---

[7] In light of these findings, the court need not consider the relevance of Jasin's *curriculum vitae*.

### C.    August 2012 Email Exchange (Proposed Exhibit C)

Plaintiffs move to admit the entirety of an email exchange among the parties and their counsel from August 2012.  This exchange contains an August 11, 2012 email from Dr. Cynthia Renehan ("Dr. Renehan"), Assistant to the Superintendent for Instructional Support, to the District's counsel in which Dr. Renehan discussed whether the District could meet J.N.'s needs and requested advice about how to proceed.  (Doc. 10-4 at 7).  Dr. Renehan inadvertently copied J.N.'s parents on the email, who subsequently forwarded the chain to plaintiffs' counsel.  (Id. at 6-7).  Plaintiffs' counsel then sent the exchange to Dr. Kay and asked for her impressions on the District's suggested placement for J.N.  (Id. at 6).  Shortly thereafter, the District informed plaintiffs' counsel of this error, asserted that Dr. Renehan's communication was protected by the attorney-client privilege, and requested destruction of the purportedly privileged material.  (Doc. 18-2, Ex. K).  When plaintiffs sought to include this email chain in their exhibit book prior to the first due process hearing, the District submitted a motion *in limine* to exclude portions of pages six and seven of the proposed exhibit.  (Id. Ex. J).  The Hearing Officer apparently did not formally rule on the District's motion but requested that plaintiffs replace the emails at issue with blank pages in the exhibit book pending introduction of the emails at the hearing.  (Doc. 18 at 24).

Both parties sought to introduce portions of the email chain at various points in the hearing.  The District repeatedly objected to the introduction of Dr. Renehan's email on privilege grounds, while plaintiffs argued that their responses to her email

14

should not be admitted without Dr. Renehan's email for context.  The timeline of the parties' attempts to introduce these materials will not be recited here.  Without ruling on privilege, the Hearing Officer ultimately excluded Dr. Renehan's email based on lack of probative value given that the parties settled all claims with respect to the 2012–2013 school year.  (Tr. at 627:23-629:5).[8]  The District argues that Dr. Renehan's email should also be excluded on appeal as privileged and irrelevant.  (Doc. 18 at 24-27).

The court will first consider whether proposed Exhibit C should be excluded on the basis of privilege.[9]  The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The protections afforded by this privilege extend to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."  In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF LAW GOVERNING LAW § 68 (2000)).

---

[8]  Over plaintiffs' objections, the Hearing Officer admitted Exhibit S-41, in which the District redacted plaintiffs' counsel's characterization of Dr. Renehan's email but otherwise reproduced his subsequent exchange with the parents and Dr. Kay.  (Tr. at 153:19-154:4; 392:9-12).

[9]  The court notes that, because plaintiffs bring suit under the IDEA, federal common law governs the analysis of privilege.  Woods ex rel. T.W. v. N.J. Dep't of Educ., 858 F. Supp. 51, 54 (D.N.J. 1993).

In the instant matter, the relevant communication begins with an August 11, 2012 email from the District's attorney apparently to Dr. Renehan—an employee of the District—in which counsel requested that Dr. Renehan offer to meet with the parents prior to the school year to address J.N.'s health issues. (Doc. 10-4 at 7). In a reply email that same day, Dr. Renehan expressed concerns about meeting J.N.'s needs and asked counsel whether she was responsible for setting a date for the meeting. (Id.) Dr. Renehan further provided counsel with an overview of how the District had handled its responsibilities toward J.N. and ended, "Please let me know what to do next!" (Id.) Under these circumstances, the emails between Dr. Renehan and counsel constitute communications between privileged individuals and implicate the provision of legal advice. The court also finds that the email was sent in confidence. Notwithstanding the fact that Dr. Renehan copied J.N.'s parents on the email, the communication is addressed in part to counsel, contains a candid assessment of how the District had treated J.N., and is written in an informal manner inconsistent with an earlier communication from Dr. Renehan to plaintiffs' counsel. (See id. at 7-9).[10]

Plaintiffs contend that the District waived any attorney-client privilege with respect to Dr. Renehan's email by disclosing it—even inadvertently—to J.N.'s

---

[10] Plaintiffs argue that Dr. Renehan "correctly" sent the email in question to J.N.'s parents and other members of the IEP team because the District would have violated the IDEA by "predetermining" J.N.'s placement had Dr. Renehan excluded the parents from the communication. (Doc. 12 at 7). The court disagrees that Dr. Renehan intended to send the email to the parents but does not address the merits of plaintiffs' IDEA claims at this juncture.

parents.  (Doc. 12 at 7).  Federal Rule of Evidence 502(b) provides that, in a federal proceeding, unintentional disclosure of privileged materials does not result in waiver of that privilege if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."  FED. R. EVID. 502(b).  Adopting a case-by-case approach, courts within the Third Circuit consider the following factors in determining whether an inadvertent disclosure constitutes waiver:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be serviced by relieving the party of its errors.

Alers v. City of Philadelphia, No. 08-4745, 2011 WL 6000602, at *2 (E.D. Pa. Nov. 29, 2011).[11]

Applying these factors to the case *sub judice*, the court finds that the District did not waive attorney-client privilege when Dr. Renehan inadvertently copied J.N.'s

---

[11] To the extent that earlier decisions in this circuit adopted a strict approach to waiver in which inadvertent disclosure to a third party necessarily waives privilege, more recent authority has eschewed that approach.  Compare United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."), with Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 856 (3d Cir. 1995) (holding that the district court did not err in determining that inadvertent disclosure did not result in waiver), and In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) (observing that inadvertent disclosure "does not automatically forfeit the attorney work product privilege").

parents on her August 11, 2012 email to counsel.  In its motion *in limine* at the

administrative level, the District averred that it "takes the utmost precautions with

respect to privacy of email communications."  (Doc. 18-2, Ex. J).  The email in

question does not bear indicia of those precautions, such as a "privileged" or

"confidential" label.[12]  The court recognizes, however, that the pervasiveness of

electronic communication has increased the risk of inadvertent disclosure of

privileged material, especially outside formal document production.  The court

therefore finds that the first factor of the waiver inquiry is neutral.[13]

The factors concerning the number and extent of disclosures typically relate

to disclosures in the context of a document production and also have little relevance

here.  See Burt Hill, Inc. v. Hassan, No. 09-1285, 2010 WL 419433, at *4 n.4 (W.D. Pa.

Jan. 29, 2010).  While an attorney's inadvertent disclosure of an isolated document

may increase the disclosing party's burden to protect that document, see Sampson

Fire Sales, Inc. v. Oaks, 201 F.R.D. 351, 360-61 (M.D. Pa. 2001), this case involves an

accidental disclosure by an employee of the District rather than by counsel.

---

[12] The bottom of page seven of the exhibit contains such a disclaimer, likely in connection with counsel's earlier email to Dr. Renehan.  (See Doc. 10-4 at 7).

[13] Citing Local 851 of the International Brotherhood of Teamsters v. Kuehne & Nagel Air Freight, Inc., 36 F. Supp. 2d 127 (E.D.N.Y. 1998), plaintiffs argue that the District waived any privilege because it did not take sufficient measures to maintain the confidentiality of the email.  (Doc. 12 at 7).  Local 851 is inapposite because in that case counsel inadvertently filed a privileged letter with the court. See Local 851, 36 F. Supp. 2d at 128-31.  Filing a document with the court "is inconsistent with a claim of privilege" and generally results in waiver.  McGreevy v. CSS Indus., Inc., No. 95-CV-8063, 1996 WL 412813, at *3 (E.D. Pa. July 17, 1996); accord United States v. Gangi, 1 F. Supp. 2d 256, 264-68 (S.D.N.Y. 1998).

Plaintiffs' counsel, not the District, was responsible for the subsequent disclosure of the email to Dr. Kay.  See Miron v. BDO Seidman, LLP, No. 04-968, 2004 WL 3741931, at *3 (E.D. Pa. Oct. 21, 2004).  Furthermore, the disclosure extends only to the District's assessment of its ability to meet J.N.'s needs as of August 2012, whereas plaintiffs allege violations of the IDEA with respect to the 2013–2014 school year and related Extended School Year ("ESY") services.

In terms of the steps taken to rectify the inadvertent disclosure, the District first requested that plaintiffs destroy the privileged communication approximately four days after the disclosure and memorialized its position via letter several weeks thereafter.  See Alers, 2011 WL 6000602, at *2 (finding timely defendants' request that plaintiff return a privileged document four days after the document was used during a deposition).  The District submitted a motion *in limine* to prevent the introduction of Dr. Renehan's email at the due process hearing and consistently objected to any use of the privileged portion of the email exchange during the hearing.  This factor favors the District.

Finally, the interests of justice counsel in favor of excluding Dr. Renehan's email given the significance of the attorney-client privilege.  See Smith v. Allstate Ins. Co., 912 F. Supp. 2d 242, 248 (W.D. Pa. 2012).  The District's potential loss of this privilege outweighs any prejudice to plaintiffs that results from the partial admission of the email chain at issue.[14]  In Apionishev v. Columbia University in the City of

---

[14] The court notes that plaintiffs have not moved to exclude the portions of proposed Exhibit C that the Hearing Officer admitted at the due process hearing.

New York—a case with facts analogous to the instant matter—an employee of defendant Columbia University inadvertently copied the plaintiff on an email intended for counsel.  No. 09 CIV. 6471 SAS, 2012 WL 208998, at *4-5 (S.D.N.Y. Jan. 23, 2012).  Counsel promptly informed plaintiff that the disclosure was inadvertent and did not represent a waiver of the attorney-client privilege.  Id. at *5.  The court reasoned that it would be "unfair to let [plaintiff] benefit by a mistake made by a lay person, outside of counsel's control" and held that no waiver had occurred.  Id. at *11.  The court finds this analysis persuasive and applies the same considerations to the instant case.

Upon consideration of the factors applied by this circuit, the court concludes that the District did not waive attorney-client privilege by inadvertently disclosing to plaintiffs a privileged email exchange between Dr. Renehan and the District's counsel.  Accordingly, the court will deny plaintiffs' motion to admit proposed Exhibit C to the extent that the exhibit is not already part of the administrative record.[15]

### D.    Work Samples from Janus (Proposed Exhibit D)

Plaintiffs seek to admit a collection of J.N.'s work product and progress reports from Janus.  The Hearing Officer excluded these exhibits upon objection on the grounds that plaintiffs had not provided the District enough time to review the

---

[15] Because the court declines to admit proposed Exhibit C on the basis of privilege, it need not determine whether the Hearing Officer properly excluded portions of the exhibit for lack of probative value.

materials before the December 3, 2013 hearing.  (Tr. at 314:7-315:2).  According to

plaintiffs, proposed Exhibit D demonstrates that J.N. made meaningful progress at

Janus in multiple subjects and that Janus tailored its instruction to meet J.N.'s

needs.  (Doc. 12 at 7-8).  The District counters that plaintiffs' disclosure of these

exhibits was untimely, that the work samples are not relevant to this action, and that

the documents contain inadmissible hearsay.  (Doc. 18 at 28-31).

The District notes that plaintiffs disclosed the work product and progress

reports on November 26, 2013 and December 2, 2013, less than five business days

before the December 3, 2013 hearing at which plaintiffs sought to introduce these

exhibits.  (Id. at 28).  Those documents that are dated range from August 30, 2013 to

November 26, 2013.  (Doc. 10-5).  Plaintiffs aver that "[w]e gave the school district the

documents as soon as we could" but does not explain why they were unable to

disclose the documents earlier.  (See Tr. at 312:20-313:5).  With the exception of

J.N.'s November 26, 2013 status report in social studies and accompanying materials

(Doc. 10-5, Ex. P-68), plaintiffs have not presented a sufficient justification for failing

to disclose the proposed exhibits at least five business days before the relevant

hearing.  See Antoine M., 420 F. Supp. 2d at 403.

The court acknowledges that plaintiffs could not have disclosed the November

26, 2013 social studies progress report five business days before the hearing.  Barring

other reasons for exclusion, evidence acquired after an IEP—including information

about a student's progress in an alternative setting—may be admitted to the extent

that it bears on the appropriateness of that IEP when initially drafted.  L.G. *ex rel.*

E.G. v. Fair Lawn Bd. of Educ., 486 F. App'x 967, 975 (3d Cir. 2012) (nonprecedential) (citing Susan N., 70 F.3d at 762).  Courts must exercise caution before admitting such after-acquired evidence in light of "[t]he dangers inherent in . . . second-guessing the decisions of a school district with information to which it could not possibly have had access at the time it made those decisions."  Susan N., 70 F.3d at 762.[16]

The IEPs at issue in this action address, *inter alia*, J.N.'s needs in reading, writing, and math; ESY services; assistive technology; and occupational and speech therapy.  (Doc. 9-13, Exs. P-32, P-35).  The November 26, 2013 status report focuses solely on J.N.'s progress in social studies, particularly with respect to the quantity and quality of his oral participation in the class.  The report does not, for example, speak to J.N.'s progress in reading comprehension or fluency.  Indeed, the report expressly states that the social studies curriculum had *not* emphasized reading comprehension through that point in the school year.  (Doc. 10-5, Ex. P-68 at 2).  The court is therefore unable to assess the appropriateness of J.N.'s IEPs from this report.  Accordingly, the court considers proposed Exhibit P-68 non-useful and will decline to admit it.  See Lebron, 769 F. Supp. 2d at 796 (finding a proposed progress

---

[16] The District cites M.J. *ex rel.* Maureen J. v. Tredyffrin Easttown School District, No. 13-2012, 2013 WL 5377846 (E.D. Pa. Sept. 26, 2013), in support of its argument that J.N.'s progress at Janus is not relevant to whether it offered J.N. FAPE.  (Doc. 18 at 29-30).  M.J. is distinguishable from the instant matter because in that case plaintiffs sought to admit into evidence an IEP from a new placement before the IEP had even been drafted.  M.J., 2013 WL 5377846, at *4.  The court held that it could not possibly evaluate "non-existent" evidence.  Id.

report non-useful on the grounds that plaintiffs had not provided enough

information about the student's educational program to permit the court to draw

any inferences from the student's progress at a private placement).

Finally, the untimely admission of the Janus work samples and progress

reports would be prejudicial to the District.  The District would not have an

opportunity to question Janus about the authenticity or content of the exhibits

without additional testimony on the record.  See Jaffess v. Council Rock Sch. Dist.,

No. 06-0143, 2006 WL 3097939, at *3 (E.D. Pa. Oct. 26, 2006) (concluding that

prejudice would result from the late admission of an affidavit from the student's

parent regarding the student's progress at an alternative placement and declining to

delay the proceedings by allowing responsive affidavits).  The court therefore

declines to admit proposed Exhibit D on this additional basis.[17]

### E.   Court Documents Presenting an Alleged Conflict of Interest (Proposed Exhibit E)

Finally, plaintiffs move for admission of a decision by this court in a separate

action that they argue evidences a conflict of interest between the Hearing Officer

and counsel for the District.  In the separate action, the court dismissed on summary

judgment a former hearing officer's suit against ODR and other defendants alleging

that she was unlawfully terminated for engaging in certain advocacy related to

special education.  (Doc. 10-6, Ex. P-72).  Counsel for the District in the instant case

---

[17] Given these findings, the court need not consider whether portions of proposed Exhibit D may also be excluded on the grounds that they contain inadmissable hearsay.

represented ODR and an individual defendant in the separate action.  (Doc. 10-6, Ex. P-71).  Plaintiffs imply that because ODR contracts with only a finite number of hearing officers, had the former hearing officer prevailed in her suit, the Hearing Officer in the instant matter may not have retained his position.  (Doc. 12 at 8-9).  According to plaintiffs, the Hearing Officer is essentially indebted to the District's counsel and both should have disclosed this purported conflict of interest.  The District argues that this inference is unsound and that the proffered exhibits do not satisfy the additional evidence standard.  (Doc. 18 at 31-34).

The court may quickly dispatch with this request for admission.  To be sure, the IDEA guarantees an impartial due process hearing.  A hearing officer may not, for example, be an employee of the agency responsible for providing FAPE or have any personal or professional conflicts of interest that could affect the hearing.  20 U.S.C. § 1415(f)(3)(A); see also 22 PA. CODE § 14.162(p)(2).  On appeal, a party may challenge a hearing officer's decision as biased.  Dombrowski v. Wissahickon Sch. Dist., No. 01-5094, 2003 WL 22271654, at *10 (E.D. Pa. Sept. 30, 2003).  But the challenging party must provide some basis for this assertion.  In Allyson B. ex rel. Susan B. v. Montgomery County Intermediate Unit No. 23, the hearing officer had worked with counsel for the school district and at the time of the hearing worked with counsel's wife.  No. 07-2798, 2010 WL 1255925, at *9 (E.D. Pa. Mar. 31, 2010), aff'd sub nom. A.B. ex rel. Susan B. v. Montgomery Cnty. Intermediate Unit, 409 F. App'x 602 (3d Cir. 2011).  The court held that the hearing officer's professional relationships with counsel and counsel's wife did not create any bias or appearance

24

thereof.  Id. ("Due process does not require a judicial officer to recuse simply

because the officer had at one time a working relationship with the counsel of a

party.").

      In the case *sub judice*, proposed Exhibit E does not provide any evidence of a

conflict of interest between the Hearing Officer and counsel for the District, let alone

a professional relationship between them.  Plaintiffs ask the court to consider a

series of counterfactual events that could have potentially given rise to an inference

of bias.  Plaintiffs' theory is far too attenuated to warrant admission of proposed

Exhibit E.  The court has evaluated the proffered evidence and will exclude it as

wholly irrelevant.

**IV.**    <u>**Conclusion**</u>

      For all of the foregoing reasons, the court will deny plaintiffs' motion (Doc. 10)

to supplement the administrative record.  An appropriate order follows.


                  <u>/S/ CHRISTOPHER C. CONNER</u>
                  Christopher C. Conner, Chief Judge
                  United States District Court
                  Middle District of Pennsylvania


Dated:      September 24, 2014